Good morning, Your Honors. May it please the Court, my name is Todd Norris for the Appellant Contemporary Services Corporation. And before I begin, I would like to reserve three minutes for rebuttal. Certainly. Please try to keep your own time and I'll try to help. Okay. So I'd like to begin with correcting a statement that appears, it's peppered throughout appellees' briefs, but I think the most extreme examples appear at page 59 and 61 of the principal brief where they argue that the Washington court in the prior action ruled that my client, Contemporary Services Corporation, had unreasonably delayed in attempting to join these defendants, in this case, to the prior action. That never happened. There is nowhere in the record a ruling by the Washington court that my client unreasonably delayed. There's no ruling that they delayed at all. In fact, the word delay is not even used. And if I'm recalling correctly, I think it was about a one-sentence order. And the court did not say that we delayed. Well, I took your adversary's statement really as just a conclusion drawn from the fact that the amendment wasn't allowed. And I understand it wasn't allowed because the district judge thought you were close to trial at the time. One could draw from that that you should have amended earlier, and therefore one could conclude that the delay was unreasonable. But I understand that was not part of the judge's decision. Correct. And what I want to emphasize there is the, if I pronounce this correctly, the Mapoyo, M-P-O-Y-O case, which is a Ninth Circuit, 2005 Ninth Circuit case, held that the denial of leave to amend when based on delay does not prevent the application of res judicata. But, again, we have three important facts that I think distinguish that case, and that's that the Washington court did not find delay. The Washington court said that my clients could have brought the claims. It did not say that they should have. And more importantly, when the denial of leave to amend, it, excuse me, I misstated, but the denial of leave to amend does not result in claim preclusion where the claims were not required to have been brought. That was an effort at permissive joinder, correct? Excuse me? The effort in Washington to join the additional parties was framed as permissive joinder? That would be our, that's our position, that it would be, would have been permissive and was not compulsive. Did anyone in that proceeding suggest that the additional, the adding of these additional parties was required? I don't, there's no. Do you understand the difference between required and permissive joinder? Yes, Your Honor, and that's. I repeat the question. Did anyone in the Washington proceeding suggest from either side that these additional parties were required to be part of that litigation? I do not believe that they did. I didn't think so, but if there's something that suggests that, I'd like to know it. I believe you're correct, Your Honor. I was not involved, but that's my understanding of the record, is that that argument and position was never taken. And that's a further reason why I believe that the judge, when denying the leave to amend, did not believe that he was thereby precluding my clients from pursuing those claims. And the subsequent stipulation preserving evidence for the subsequent lawsuit suggests that not only the judge, but all of the parties anticipated that my clients would be able to assert those claims. Can I ask you about the timing of that stipulation? The record's a little thin on how the case got settled in Washington. It looks like you were surprised that the defendant, Haskell, offered a couple hundred thousand dollars, and then you accepted it. And I can't tell, where does the stipulation fit into that? Was that part of the settlement deal? I apologize, because I was not involved at that time. But my belief is that the stipulation, I believe, was subsequent. But honestly, I would have to check the record. Because it seems to me your argument would be stronger if, in fact, the parties settled, and part of the terms of the settlement were that all claims against Landmark are preserved. And that could be true expressly. That would help you the most. Even if it was implicit, it would help you some. But I can't draw that conclusion from the timing. All I can draw is it was subsequent to the stipulation. I don't know what that means, and it appears you don't either. Well, in terms of whether the parties contemplated further litigation, the settlement, I agree, it was an acceptance of an offer of judgment. And therefore, there weren't those terms that parties would ordinarily want to flesh out in a settlement agreement. Didn't the judge in the Washington actions suggest that the claims would be better filed in California? The party certainly did that. I don't know if the judge explicitly stated that in his stipulation or order. Okay. But that would bring me to the waiver argument. And let me just the ‑‑ I tried to distill on appeal what I thought would be the most important points to get to. And the appellees have argued that we want to have it both ways. And on the privity issue, in other words, that where it's convenient to bind landmark and the defendants, we want to argue there is privity. And then when in the same breath they say, well, we want to say that there is no privity for purposes of claim preclusion. But that's a fundamental misunderstanding of our position. Our position is that in the first place, we do not believe there's privity. But alternatively, if the court were to conclude that there was privity, then it would be fundamentally unfair for landmark to take the position that we're not bound by anything Haskell did, any of the arguments he made or the positions he took. They want to say that he was in privity with them for purposes of claim preclusion, but not in privity with them for purposes of the waiver, wherein he took the position with the court that we should file separate lawsuit, a subsequent lawsuit. And so I think it's important to understand who, in fact, is trying to have it both ways on that issue. The further point that I'd like to make in my remaining time is that the Intermedics decision from the Northern District of California, I believe, is well-reasoned. And, in fact, that this court should adopt the reasoning that was used in that case with respect to trade secrets and the fact that a subsequent misappropriation is not considered the same claim as the initial misappropriation. And here the case against Haskell in Washington, the prior case, was based on his conduct, his misappropriation. This case in California is based on landmark's subsequent misuse of the trade secrets that he stole. So we have alleged at 648 in the record the complaint alleges that Landmark, Harrison, and Kransky unlawfully solicited customers, defendants. You have two minutes, by the way. Okay. Do I have any for rebuttal, or is that? Whatever you leave. Oh, okay. Well, the defendants used CSC's proprietary information to solicit CSC customers and potential customers, including the university. You can read it. Read it, counsel. Okay. Well, my point is that the University of California, the McAfee Stadium, and the Heinz Field, those are different rights. Those are different substantive rights that we're talking about, our contractual rights for those venues. And they were alleging that the defendants have interfered with those rights, which were not at issue in the Washington case. Let me ask you a quick question and hopefully get a quick answer. In your complaint, is the complaint under CFAA, the federal statute? That's correct, isn't it? That is one of the claims, yes. Did your research uncover the recent Ninth Circuit decision in the United States versus NOSAL, April 28th? No, it did not. I'm sorry, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. Mel Avanzado for the appellees and cross-appellants. I'd like to reserve one minute for my appeals rebuttal. Just going through a couple of the issues raised by counsel, the leave to amend order, which is at ER 383, is only a one-line order, but there's a handwritten paragraph which we quote in our brief. And it does say, it does mention the trial date, and it does mention that there was unreasonable delay in amendment, which is the reason for the denial of leave to amend 383. Who represented the individual in that case? A lawyer, Mr. Bolasina, that was retained by Landmark's insurance. They paid the fee? Landmark's insurance paid the fee. Landmark's insurance carrier? Yes, sir. Presumably Landmark's insurance carrier paid the Haskell judgment as well. Yes, they did. And that's why we're here, really, because Landmark now feels that having paid once, or at least its insurer feels, having paid once, it thought it was buying freedom, and it then faced another lawsuit. Correct, which I want to pivot to Judge Hawkins' point about permissive joinder. The whole point of res judicata, when someone omits part of a claim, is it's permissive. If it were mandatory, if it was a compulsory claim, then there would be an indispensable party argument in that first action. Was that made? No, it was not. Did your side, did the lawyer hired by Landmark's insurance carrier argue that these parties had to mandatorily be joined? No, it did not. Never suggested that? I don't believe so, no. I have not scoured the record of that particular litigation. You might wish now that they had. No, I don't think so, Your Honor. And respectfully, I would say that if you hold that I have to argue that everything that's permissive has to be raised below, then you've got res judicata. You've got the privity analysis. You've got all of the same claims analysis and transactional nucleus of facts analysis. And I think that that makes a mockery, frankly, of the res judicata doctrine. If that's what you're seeking to hold, then we have to make a permissive argument every time someone decides to split a claim, which gets back to the waiver point. You know, waiver is the relinquishment of a known right. We all know this. And you don't know the right unless the claim is pending. So we couldn't have waived the res judicata defense without the second claim, without the second case being pending. That's the cases that we hold that we've cited to you. Now, estoppel is a different point. But, again, estoppel requires the court relying. And, again, I go back to 383 of the record, ER 383. The judge didn't rely on the it's a better forum, you know, it's landmark and its officers should be sued in California. The court didn't rely upon that in denying waive to amend. It's pretty clear in the court's handwritten order at 383. You know, I don't think waiver or estoppel are your weakest points. I think the problem I'm having with your position is the same claim issue. Because as I understand the claim being articulated here, there were certain things that the other landmark employees did, for which landmark was responsible, that Haskell did not do. Well, but that's where I get to Iqbal. And I get to Iqbal and Twombly. Because they didn't plead it. The quotation that he recited from the pleading is the kind of consistent with language that Iqbal decries. You have to plead facts. If you look at the complaints, if you look at the two complaints in the two cases. Before you get into that, let me ask you the same question I asked your opponent. Have you read United States v. NOSAL? I'm afraid I have not, Your Honor. You're not familiar with it at all? I am not, Your Honor. April 28th of this year, you didn't update your research on CFAA? Last week? No, I did it on res judicata and the fees, but I did not on the CFAA, unfortunately. So if you're right on Iqbal, shouldn't he get an opportunity to amend before we can determine or the district judge should be able to determine whether or not res judicata applies so we see if, in fact, they're different claims? But Iqbal did not allow amendment. Neither did Twombly. And the reason is because those plaintiffs had even less of an opportunity to discover facts. And these people have been in litigation with us since 2006. And so our point is that by 2009, when they file this complaint, you would think that they have all the facts that they want. They're very specific on all the hassle conduct, right? There's these computer files. There's the retreat. And all of them, I can read you a list. I think I outline it in our briefs, but I can read you the list where they essentially cut and paste from their Washington pleadings into this one. And the Haskell stuff is definitely there. The question I have is, is that all that is there? And you're saying, yes, because they're bound by Iqbal and no leave to amend. They have no ñ well, they don't have any ñ remember, they filed this case three months, I think, three months after the judgment in the Washington case. I was going to go through the timeline, but I'm probably going to run out of time. But they filed this case shortly after the hover of litigation was over. So they've had all the discovery they had through 2009. And so when he talks about after acquired or after conduct, post-judgment conduct, you're not talking about a lot. You're talking about three months. And so all of the ñ all of his pleadings in this case relate to Haskell conduct other than conclusory allegations about Harrison. Now, I want to ñ I want to point something out, just one other thing. In the judgment, summary judgment order in the Washington case, we didn't put this in the brief, which is why I wanted to point it out. It's ER 566 through 16. We didn't put it in the brief. Why should we listen to it? Well, I put ñ I put the order in the brief, but I didn't highlight the specific language in the brief because, frankly, I didn't catch it until I was ñ I was looking at this. In the order, in the last paragraph on page 568, Judge Armstrong says in ñ in granting ñ partially granting summary judgment, says the fact that an employee of defendant had legitimate access to the information as an officer of plaintiff does not defeat the trade secret status of this information. Now, I highlight that paragraph because the only plaintiff in that case is CSC. The only officer of CSC that has any relation to this that's not still affiliated with CSC is Kransky, my client. And the only defendant in that case is an individual, Haskell, who has no employees. So if you look at the totality of circumstances in the Washington action, there's not only a privity between the parties, there's an actual ñ I would argue that they are the same in that case, and that the claims being made against them for the Haskell conduct is therefore loops in to the res judicata analysis. And the four factors of res judicata obviously are all interrelated, the identity of the parties, the identity of claims, the quality of the parties, whatever that means, we're obviously still adverse to each other. And Empollo and Kuhlman are very, very strong on that regard for us. Kuhlman says that the employer-employee relationship in and of itself establishes the quality of the parties, not to mention privity. Can I give you this hypothetical? Let's assume you've got a truck driver for a company who hits somebody on the road, okay? And then another truck driver for the same company hits the plaintiff while he's there. Two impacts. The plaintiff sues the first truck driver, does not sue the trucking company, doesn't sue the second truck driver, settles or gets a judgment against the first truck driver. I think we'd agree that that releases the company as to that driver's negligence. Does it also release the company as to the second driver's negligence? Well, you would have to view that in a transactional analysis whether the two accidents are one. And I would argue to you that that's not. Here we're talking about conduct of Haskell, giving rise to liability for Haskell, and also liability supposedly for Harrison, Kransky, and Landmark. So I would dispute your hypothetical in the transactional setting. Because you think Haskell is at the bottom of all of the misconduct complained of here. He may have worked with some of the other individuals. Right. But everything plaintiff is suing here is Haskell misconduct. The only identified trade secrets in this pleading are the four that were left from Washington. So it's your position that the resolution of the Washington matter not only wraps up what Haskell may have done in terms of accessing information from his former employer, it also wraps up what use Landmark may have made of that information. I think that's correct. Okay. Because that's at bottom. Yes is fine. Okay. Thank you, counsel. I would like to reserve the rest for my free appeal. There is no rest. Well, there's no rest. But we'll give you one minute for your cross appeal. Thank you. Thank you, Your Honors. I believe I have about a minute left. As for the ICBA issue, I do believe that the complaint adequately pleads that we've the appellees or even admit that they know what trade secrets are at issue. So we've alleged that Haskell stole trade secrets, and then we've alleged that Landmark used those trade secrets, and we've even identified three customers with which they interfered with. But do you agree that all of the conduct you're complaining of is Haskell-based? Haskell did it first, and then the other defendants capitalized on it? Well, I wouldn't call it Haskell-based. I would say that the other defendants knew that these trade secrets were obtained illegally. They even assisted in some cases with obtaining them, I believe. But it is the subsequent use of those trade secrets that they know were wrongfully obtained that makes this separate from Haskell. Haskell was not involved, as I understand it, in the three venues that we've specifically identified. Basically what you're saying is that Haskell's wrongdoing, which was settled, that that does not settle as to subsequent conduct by Landmark? Correct. It does not give Landmark a license, essentially, to further misuse our trade secrets. But we're talking about the same initial conduct, not any other events. It's what Landmark did with the conduct of Haskell, which had been settled in the first case. What Landmark did related to Haskell's conduct, which was covered in the first case. There's nothing separate that didn't originate with Haskell. That's right, and I would say that the Intermedics case addresses that issue. Okay. And unless there's other questions, you know, I could go back to the original. That's okay. The original order. You're over, so. Thank you. Thank you. You want one minute for two issues? Yes, Your Honor. The only thing I would say, I understand that it's discretionary. The only thing I would say is, and we put it somewhat in a brief, but I think the one thing that's missing from our papers is the timing of it all. The reason we put from the Kransky litigation through this one is to show that the goal is to tie us up. There's no explanation. There's still been no explanation why, from the denial of leave to amend, they waited 18 months or so. I'm not sympathetic to your attorney's fees motion, if only because you had Landmark and Landmark's insurer behind the scenes. If they wanted to get a general release as a condition of settling for Haskell, they could have done that. It was left with some ambiguity in it. Judge Kogan, it wasn't a settlement, though. It was an offer of judgment. Well, then there's another way to do it. And you can have collateral terms to a Rule 68 offer. I don't know if you can in Washington. Well, I don't know either. But, frankly, the case is so hotly contested that that was the only way, that it was not going to settle in a negotiated settlement for $200,000. So, and if it were a settlement, we would have a different discussion of the issues of preclusive effect of a settlement. But it wasn't. It was a judgment. So I think that the misconception that it was somehow our ability to control the terms of this, I'm not sure that's correct. You're not arguing attorney's fees right now, are you? I am. I'm arguing that the timing of it all shows that there is bad faith in addition to the objective speciousness of the pleading itself. And so, you know, I think we've cited the cases that talk about timing of the lawsuit being one of the factors for bad faith. But I understand it's a big hurdle because of the discretion afforded to the judge. Thank you very much. Thank you, counsel. Case just argued will be submitted.
judges: Cogan, Reinhardt, Hawkins